## Case No. 641.

### ATWOOD v. KITTELL et al.

[9 Ben. 473;[1] 17 N. B. R. 406.]

District Court, D. Vermont.    April, 1878.

BANKRUPTCY— TITLE OF ASSIGNEE — CONVEYANCE OF REAL ESTATE—RENT.

K. furnished money to B., his son-in-law. and took a conveyance of a farm therefor; then K. conveyed the same farm to B. and his wife, conditioned upon the annual payment of a sum of money which was equal to the interest on the purchase money, to K. during his life-time and that of his wife, which sum was to be in full of the share of B. and his wife in his estate; further clauses conveyed the property to B. and his wife, their heirs, executors, and administrators, in consideration of an acquittance which B. and his wife gave to K. of all claims upon K.'s estate, and directed K.'s administrators to re-deed if the conditions were fulfilled. The annual payments were made up to 1867, but part of the amount due thereafter was not paid. B.'s wife died in 1867; her mother and her father, K., in 1874. Before K.'s death B. went into bankruptcy; and his assignee having filed a bill to determine his rights to the farm, making the heirs of. B.'s wife and the administrators of K.'s estate parties: *Held*, that the conveyance to B. and his wife made them joint tenants as at common law, and conveyed a life estate to them for the lives of the lessor and his wife: that the clause conveying the real estate in .consideration of the acquittance conveyed the whole remainder after the expiration of the life estate; that the clause directing the administrators of K.'s estate to re-deed the premises, was no part of the agreement of the parties. but a mere covenant for conveyance by his representatives; that the intention of the conveyance was to have the annual payments made and the estate holden for fulfillment; that the assignee was entitled to the farm, subject to a lien in favor of the administrators of K., for the amount of the annual payments due at his decease, with interest from the dates at which payment should have been made.

In bankruptcy.

WHEELER, District Judge. This cause has been heard upon pleadings, proofs, and argument, from which it appears that William Buck, now a bankrupt of whose estate the orator is assignee, owned the farm in question, subject to some incumbrances, and that he and his then wife, who was the daughter of Jonathan C. Kittell, now deceased, and of whose estate the defendants Lewis H. Kittell and William F. Willey are administrators, conveyed the farm to him for the purpose of procuring sixteen hundred and sixty-six and two-thirds dollars, with which to pay off the incumbrances, and of having it reconveyed to them, subject to the payment of an annual sum equal to the interest advanced, during his life and the life of his wife, which sum was to be in full of their share of his estate; that pursuant to this arrangement they joined in a conveyance of the farm to him, and he immediately executed the instrument of conveyance set forth in the bill of complaint to them, and

¹ [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

delivered to them the money and they executed an acquittance of all claim to his estate and delivered it to him. The wife of the bankrupt died in 1867, her mother in October, 1874, and her father on the 24th day of November, 1874. The annual sum was paid up to 1867, and part or all of that due since has not been paid. Perhaps the elder Kittell had before made advances to his daughter on account of which he required the acquittance, and perhaps not; whether he had or not is quite doubtful upon the evidence and not at all material here.

This bill is brought by the assignee to ascertain what rights he has to the farm, and the heirs of the wife of the bankrupt, as well as the administrators of the estate of her father, have been made parties. As the assignee stands upon the rights of the bankrupt, it becomes necessary to ascertain what rights remained to the bankrupt after the transaction and conveyances stated, and how they have been affected by subsequent occurrences.

The wife of the bankrupt was under the disabilities of coverture, but her husband and father were under none. She had no vested rights in her father's estate, and her acquittance of it formed no consideration in law for either of the conveyances. The bankrupt and her father were each the owners of what they conveyed, and had full power over the direction in which the conveyances would take the property.

It has been said in argument that the transaction showed the conveyance from the bankrupt to be a mere mortgage to secure repayment of the money advanced, and that it should be so construed now, and a lien declared for the money in favor of the representatives of the elder Kittell. But the transaction shows that the money was not to be repaid but was to remain. so there was no debt for any mortgage to secure; and without a mortgage debt there can be no subsisting mortgage. There are no extrinsic facts that have any weight to control the ordinary construction of these instruments. They were made upon valid consideration, by persons competent to make them, and are operative according to their legal construction and effect. The deed from the bankrupt was an absolute conveyance of the farm, and there is no room for construction upon it. The conveyance to him and wife is somewhat anomalous, and must receive interpretation. Whatever it carried was conveyed to them, "their heirs, executors, and administrators." At the common law this would have made them joint tenants without their being husband and wife. Co. Litt. 180; 2 Bl. Comm. 179. The nature of this joint tenancy is that the survivor takes the whole, according to the estate he would have if the tenancy continued, and either may alien his share according to the same estate. Brooke, Abr. "Cui in Vita," 8; Litt. Ten. § 288; Co. Litt. 186a. They hold by entireties for seisin,

possession and survivorship, and by shares for feoffment, forfeiture, or default in a real action. Greeneley's Case, 8 Coke, 71. But when a conveyance is taken to husband and wife on account of their legal identity and attendant disabilities, they take differently. They take by entireties, but neither can alone alienate to create a moiety, so they do not take by moieties. In Brooke, Abr. "Cui in Vita," S, it is laid down as per curiam, "ou le baron et femme purchase terre, et le barron alyen et devye, la femme poet aver cui in vita, et recouver l'entiere, car ne sont moyties entre la barron et femme durant le couverture, et ideo n'est bone pour ascun moytye, mes si les purchase devaunt le couverture, et puis ent'mary, et le bar' alyen tout et devye, la femme avait cui in vita de l'moyty et recouver ceo et l'alienac' est bon' del aut' moity q'd nota diversitie, car patet." 39 Hen. VI. 45.

The statute of this state of 1797 severed all joint tenancies not created in express terms; but this did not include the peculiar joint estate created by a conveyance to husband and wife, (Brownson v. Hull, 16 Vt. 309,) and it seems to have been the policy of the legislature of the state to preserve that kind of estate with its characteristics; for by the Revised Statutes, the former statute was expressly limited so as not to apply to such conveyances, and so the law remains still, (Gen. St. c. 64, §§ 2, 3.) So by the law of the state, this conveyance to husband and wife stood as at common law, and under it the survivor, the husband, as the common law has always been, took the whole. Litt. Ten. § 291; 1 Thom. Co. Litt. 576; Beaumont's Case, 9 Coke, 138b; Co. Litt. 187; 2 Bl. Comm. 182; Doe v. Parratt, 5 Term. R. 654; 4 Kent, Comm. 362; Brownson v. Hull, 16 Vt. 309. The instrument was executed with all the formalities required by the statute for the execution of a deed to convey full title to lands. No particular form of words is necessary to constitute such a deed. All that is required is that "there must be words sufficient to specify the agreement and bind the parties." 2 Bl. Comm. 297. The statute prescribes the mode of execution but not the form.

The first part of the instrument is plainly a lease of the premises during the lives of the lessor and his wife, provided the lessees pay the annual sum of one hundred dollars to them or the survivor, and pay all rent, which meant public rent, and taxes. The annual payment was not called rent in the instrument, but merely a sum of money. This conveyed a life estate, for the lives of the lessor and his wife, and the life of the survivor of them, to the lessees. Further on in the instrument it says: "And I the said Jonathan C. Kittell of Sheldon aforesaid, for and in consideration of an acquittance this day signed by the said William and Charlotte Buck to any right of claim to any portion of my estate after my decease,

I do hereby give, grant, convey, and confirm all the before-named and described premises to the said William and Charlotte Buck, their heirs, executors, and administrators, with all the privileges and appurtenances belonging, from and after the time of my own decease, and the decease of my wife Elizabeth Kittell, so that no one claiming under me shall have or enjoy any right to any part or portion of said premises forever." These words are sufficient to make a conveyance of the whole remainder after the expiration of the life estate. As to that it was to take effect in futuro, but if livery of seisin was necessary, this would not defeat it, for livery of the particular life estate to the same parties under the same instrument would uphold it.

But under the registry system, a conveyance in futuro, without any particular estate to uphold it, may be made valid. Gorham v. Daniels, 23 Vt. 600. There is nothing in the instrument to show any different intent, except the last clause which directs and empowers the executors and administrators of the grantor to re-deed the premises "if the said William and Charlotte Buck faithfully on their part fulfil the conditions of" the instrument.

But this is not repugnant to the grant, further than it requires fulfillment of the conditions. It is in accordance with it, and only shows that the grantor may not have understood the full effect of the previous grant, and have inserted this clause for greater certainty. And further, this clause is no part of the agreement of the parties, but is merely a direction to his representatives, not binding on the other parties unless it be in respect to the part they were to fulfill. The instrument must be so construed as to give effect to all parts, according to the intention as gathered from the whole. And as it commenced with a proviso that the annual payment be made, and ended with a condition that conveyance be made if they fulfilled, the intention is plain to have the estate holden for fulfillment.

This construction is the same in effect as to hold that this part of the instrument was a mere covenant for conveyance by his personal representatives. For the covenant would run to the same persons in the same form, and would require conveyance to be made or decreed to the same persons.

The result is that the orator is entitled to the farm, subject to a lien in favor of the administrators of Jonathan C. Kittell, for the amount of the annual payment due at his decease, and to the exemption, if any, of the bankrupt. The annual payment was really interest on money and can be computed for the fractions of time, even if otherwise it could not be apportioned.

There is controversy on the evidence as to how much was due; upon which it is found that at his decease there was due all that accrued after February 10th, 1867, except

the sum of $89.31 paid just before February 10th, 1868, in baled hay, which left $10.69 balance unpaid of the instalment due that day.

As these instalments were quasi interest and became due annually, they were like annual interest in respect to forbearance after they were due; and in analogy to that kind of interest, each instalment should bear interest from the time it should have been paid until paid, or until the time of reckoning, according to the law of the state. As reckoned to the time of entering the decree, the instalments amount to $938.29.

Let a decree be entered that upon payment by the orator, as assignee in bankruptcy of William Buck, to Lewis H. Kittell and William F. Willey, as administrators of Jonathan C. Kittell, the sum of nine hundred and thirty-eight dollars and twenty-nine cents, with interest from the 2d day of April, 1878, to the time of payment, the orator is to have and hold said farm free and clear of any claim in favor of said administrators, or any of the heirs of said Jonathan C. Kittell or of said Charlotte Buck who are parties to this cause.