# CHARLOTTE W. HACKETT

v.

# LORENZO D. MOXLEY.

OCTOBER TERM, 1895.

*Husband and wife.   Use of real estate.   When converted into money by order of court.   Payment.*

1.  Real estate, of which the wife holds an undivided interest in fee, without limitation at the time of her marriage, is not her separate estate, but upon marriage the husband becomes entitled to the usufruct thereof.

2.  If during coverture such real estate is converted into money under order of court, the fund realized will be treated as real estate and subject to the same equities between the parties.

3.  If the husband gives his wife a note for the purchase price of her share, he will be entitled to the interest on the note for the same time that he would be to the use of the land, and that, no child having been born alive, would be during her lifetime.

4.  If the husband has paid the wife sufficient sums to amount, with interest at the time of her death, to the face of the note, it is thereby extinguished as between the parties.

Bill in equity.   Heard upon pleadings and a master's report at the May term, 1895, Windsor county.   TAFT, Chancellor, decreed *pro forma* for the oratrix.   The defendant appeals.

*Hunton & Stickney* for the defendant.

Neither the note nor the real estate were the separate

property of the wife.   Pom. Eq. Jur., ss. 860, 846; *Tabor v. Chilley*, 53 Vt. 487.

*Tarbell & Whitman* and *D. C. Denison* for the oratrix.

If the defendant had any interest in the real estate, he should have had it adjusted by the court when the sale was decreed.   Big. Est. and Res. Adj. 480; Pom. Eq. Jur., s. 1387; *Delano* v. *Blanchard*, 52 Vt. 584.

The note is personal property and the separate estate of the wife.   *Stearns* v. *Stearns*, 30 Vt. 213; *Bartlett* v. *Boyd*, 34 Vt. 260; *Child* v. *Pearl*, 43 Vt. 224; *Richardson, Admr.*, v. *Est. of Merrill*, 32 Vt. 28; *Cardell* v. *Rider*, 35 Vt. 47; *Richardson* v. *Wait*, 39 Vt. 535; *Caldwell, Admr.*, v. *Renfrew*, 33 Vt. 213.

THOMPSON, J.   October 4, 1866, the defendant married Abby Hackett.   At the time of her marriage, she, with her sisters, Sally and Hannah, owned a farm in Tunbridge. She acquired her title thereto November 7, 1854, by a warranty deed from her father to her and her sisters.   Her title was in fee.   While she owned a share of the farm after her marriage to the defendant, it was not her separate estate. "Separate estate in a married woman involves, as the characterizing fact, that she holds it to her sole use in exclusion of the rights of the husband." *Frary* v. *Booth*, 37 Vt. 78. There was no such limitation in this case.   April 15, 1871, this farm was sold at auction by order of the Orange county court, upon petition of Hannah for partition.   The net share of each sister in the proceeds of the sale was five hundred and forty-seven dollars and forty-eight cents.   At this sale, the defendant purchased the farm for Hannah, but at her request took it off her hands, and May 4, 1871, the commissioners who sold it deeded it to the defendant.   Mrs. Moxley's share was not paid to her, but May 4, 1871, the defendant gave her his note of that date for five hundred and

forty-seven dollars and forty-eight cents, payable to her or bearer in two years from date, with interest annually. The only consideration for this note was her supposed interest in the net proceeds of the sale of the farm.

Upon evidence not objected to, the master has found that in this transaction, the defendant did not intend to waive his marital rights in his wife's real estate. This is equivalent to finding that he did not waive them, for in a transaction of this nature there could be no waiver of such rights without an intention to waive them.

In her lifetime, Mrs. Moxley gave this note to the oratrix, without the knowledge of the defendant, and intending that the gift should be without his knowledge. At the time of the gift, Mrs. Moxley had no property except what might be owing her from the defendant on account of the sale of the farm. In the month following the decease of Mrs. Moxley, the oratrix called upon him for payment or security upon the note, and he refused to pay anything thereon.

When this case was before this court, upon the demurrer to the oratrix' bill, it was held that her rights rest wholly upon the equitable rights of the wife, as she paid nothing for the note and there has been no new promise; that the note itself is not enforceable but is evidence of an equitable claim, enforceable by the wife in her lifetime in a court of equity only : and that by the gift and the delivery of it to the oratrix, this equitable claim was transferred to her, and is enforceable by her in a court of equity only. *Hackett* v. *Moxley*, 65 Vt. 71. Hence the case is to be decided as though it were between the defendant and his wife in her lifetime, or between him and her legal representatives.

By his marriage to her, the defendant became entitled to the usufruct of all the real estate owned by her at the time of her marriage during coverture. He was entitled to the rents and profits during coverture. His estate was freehold. Whether it should last for a longer term than

the joint lives of himself and wife, or not, depended upon the birth of a child alive during coverture. In the event of such birth, his interest would last for his own life, whether his wife died before him or not. If there was no child born alive, his interest would last only so long as his wife lived. In either case he would not have an absolute interest, but only an estate for life, and his right would be that of a beneficial enjoyment. 1 Wash. Real Prop. 3d ed., 312; Schouler's Dom. Rel. 142.

Subject to this right of the husband, the wife was the owner of the real estate.

By the sale under the order of the court, the farm was converted into money or its equivalent, so far as the rights of the respective owners were concerned. As between the defendant and his wife, did her share of the proceeds of the sale remain land in equity?

In discussing this subject, it is said in 3 Pom. Eq. Jur., s. 1167, that:

"There is another phase of the doctrine of conversion of great importance in England, and a brief summary of the decisions may be useful under analogous circumstances in this country. This has happily been designated by paramount authority, and includes the particular instances of compulsory purchases and taking land by railroad companies and others possessing statutory powers, and sales of land by order of court for the purpose of settling estates of infants and lunatics, or of partition, or of paying debts and the like."

In such cases if the owner is *sui juris*, a conversion is effected, the purchase money, although not actually paid, becomes to all intents personal property; but if the owner is not *sui juris*, the purchase money remains in equity. At the time of the sale, the defendant's wife was under coverture and therefore not *sui juris*. 2 Rapal. & Law. Law Dic., title, *Sui juris*. We think this case clearly falls within the doctrine of conversion by paramount authority, and that the wife's share is in equity to be regarded as real

estate as between her and her husband, the defendant. Treating the same as real estate, the defendant was entitled to the use of it during her life, no child having been born alive during coverture. To extinguish the wife's interest in this fund, he must have paid to her in her lifetime, such a sum as at lawful interest, from the date of payment to the date of her death, would amount to five hundred and forty-seven dollars and forty-eight cents. The master finds that he paid her from time to time such sums, as at her death, at lawful interest, would amount to more than five hundred and forty-seven dollars and forty-eight cents, and consequently, in equity, there was nothing in his hands representing her interest in the real estate, at her death, for which he should account to her legal representatives or her assigns.

There is nothing in the case which shows that the debts paid by the wife with this money which she received from the defendant were debts for which he was liable. Therefore it is not necessary to discuss the effect of a voluntary payment by her of debts for which he was liable.

*Pro forma decree reversed, and cause remanded with mandate to dismiss the bill with costs.*